1  **KAZEROUNI LAW GROUP, APC**
2  Gor Antonyan, Esq. (SBN: 354718)
   gor@kazlg.com
3  245 Fischer Avenue, Unit D1
   Costa Mesa, CA 92626
4  Telephone: (800) 400-6808
   Facsimile: (800) 520-5523
5

6  **KAZEROUNI LAW GROUP, APC**
   David J. McGlothlin (SBN: 253265)
7  david@kazlg.com
   301 E. Bethany Home Road, Suite C-195
8  Phoenix, AZ 85012
   Telephone: (800) 400-6808
9  Facsimile: (800) 520-5523

10

11 *Attorneys for Plaintiff,*
   Paolo Marchica
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15 PAOLO MARCHICA,                    | Case No.:

16                 Plaintiff,

17                                     **COMPLAINT FOR DAMAGES AND**
                                       **INJUNCTIVE RELIEF FOR**
18        vs.                          **VIOLATIONS OF THE**
                                       **TELEPHONE CONSUMER**
19 CLARITY DEBT RESOLUTION, INC;       **PROTECTION ACT OF 1991, 47**
                                       **U.S.C §§ 227(C),** *ET SEQ.*
20
21                 Defendant.

22                                     **JURY TRIAL DEMANDED**

23

24

25

26

27

28

**INTRODUCTION**

1. Plaintiff PAOLO MARCHICA ("Plaintiff") brings this lawsuit for damages resulting from the unlawful actions of CLARITY DEBT RESOLUTION, INC. ("Clarity" or "Defendant"). Defendant negligently, knowingly, and/or willfully placed unsolicited phone calls to Plaintiff on his cellular phone number which is registered with the National Do-Not Call Registry, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA"), and related regulations, including but not limited to 47 C.F.R. § 64.1200(c). Plaintiff seeks relief in the form of statutory damages and injunctive relief.

2. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by Plaintiff's attorneys.

3. This case is brought to enforce the consumer privacy provisions afforded by the TCPA, a federal law that was designed to curtail abusive telemarketing practices precisely like those described herein.

4. Defendant placed unsolicited phone calls to Plaintiff's cellular telephone on multiple occasions, which was registered with the National Do-Not Call Registry.

5. Defendant has violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c) by bombarding Plaintiff's mobile phone registered with the National Do-Not Call Registry with non-emergency advertising and marketing phone calls without prior express written consent.

6. The TCPA was enacted to protect consumers from unsolicited and unwanted telephone calls and text messages exactly like those alleged in this case.

7. In response to Defendant's unlawful conduct, Plaintiff seeks an injunction requiring Defendant to cease all unsolicited voice phone calls and text messages to his phone number as well as an award of statutory damages per violation, together with court costs, reasonable attorneys' fees, and treble damages (for knowing and/or willful violations).

**JURISDICTION AND VENUE**

8.      This Court has federal question subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

9.      The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

10.     Venue is proper in the United States District Court for the Central District of California pursuant to 18 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in the County of Los Angeles, State of California as not only does Defendant regularly conduct business throughout the State of California, but Plaintiff resides within the State of California, County of Los Angeles.

**PARTIES**

11.     Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California, County of Los Angeles. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

12.     Defendant is a corporation formed under the laws of California with its principal place of business in Irvine, California. Defendant is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

13.     Plaintiff alleges that at all times relevant herein Defendant conducted business in the State of California and in the County of Los Angeles, and within this judicial district.

14.     Whenever in this Complaint it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, vice-principals, agents, servants, or employees committed such act or omission and that at the time such act or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in the routine normal course and scope of employment of the Defendant's officers, directors, vice-principals, agents,

1 servants, or employees.

2                               **TCPA BACKGROUND**

3        15.    In 1991, Congress enacted the TCPA to regulate the explosive growth of

4 the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted

5 telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer

6 Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. §

7 227).

8        16.    The TCPA was designed to prevent calls and messages like the one

9 described within this complaint, and to protect the privacy of citizens like Plaintiff.

10 "Voluminous consumer complaints about abuses of telephone technology – for

11 example, computerized calls dispatched to private homes – prompted Congress to

12 pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

13       17.    Specifically,    the    TCPA    restricts    telephone    solicitations    (*i.e.,*

14 telemarketing) and the use of automated telephone equipment, as well as violations of

15 the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[1]  The TCPA

16 limits the use of automatic dialing systems, artificial or prerecorded voice messages,

17 SMS text messages, and fax machines.

18       18.    In enacting the TCPA, Congress intended to give consumers a choice as

19 to how creditors and telemarketers may call them and made specific findings that

20 "[t]echnologies that might allow consumers to avoid receiving such calls are not

21 universally available, are costly, are unlikely to be enforced, or place an inordinate

22 burden on the consumer."  TCPA, Pub.L. No. 102-243, § 11. Toward this end,

23 Congress found that:

24                     Banning such automated or prerecorded telephone calls to
25                     the home, except when the receiving party consents to

26 ───────────────

27 [1]  According    to    the    Federal    Communications    Commission's    website,
https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list,
28 accessed on April 3, 2025: Placing telemarketing calls to wireless phones is - and
always has been - illegal in most cases.

1
2
3
4

receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

5
6
7

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

8
9
10

19.    Text messages are calls and are subject to the TCPA.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009).

11
12
13
14
15
16
17
18

20.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

19
20
21
22
23
24

21.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

25
26
27
28

COMPLAINT

22.    As of October 16, 2013, unless the recipient has given *prior express written consent*,[2] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do-Not Call Registry.

---

[2] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

23.    Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

24.    Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call.    Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

25.    With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015).    "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.*    Thus, any second call placed to a wrong number violates the TCPA.

26.    The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

27.    Defendant is a debt relief company operating within California, specializing in negotiating with creditors, on consumers' behalf, to settle debts for less than the amount owed.

28.    In Defendant's overzealous attempt to market its services, however, Defendant willfully or knowingly placed (and continues to send) unsolicited phone calls to persons who have registered their cellular telephone number on the National Do-Not-Call Registry.

29.    Through this conduct, Defendant has invaded the Plaintiff's privacy.

30.    At all times relevant, Plaintiff was a resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

31.    Defendant is, and at all times mentioned herein was, a corporation and a "person," as defined by 47 U.S.C. § 153(39).

32.    At all times relevant Defendant conducted business in the State of California and in the County of Los Angeles, within this judicial district.

33.    At all relevant times, Plaintiff was assigned, and was the owner of, a cellular telephone number (646) 515-7016 ("Cell Phone").

34.    Plaintiff is the sole user and/or subscriber of his Cell Phone and is financially responsible for phone service to his Cell Phone.

35.    Plaintiff's Cell Phone is assigned to him as his personal cellular telephone and Plaintiff uses his Cell Phone primarily for calls with his friends and family and other personal matters.

36.    Plaintiff's Cell Phone was added to the National Do-Not-Call Registry on or about August 22, 2008.

37.    Between July 2024 and the present, Defendant placed approximately **three to four hundred (300–400)** unsolicited telephone calls to Plaintiff's cellular phone.[3]

---

[3]    According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on April 3, 2025: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

38.     All of the unsolicited phone calls were placed from (208) 744-2814, (315) 650-9525, (803) 887-1981, (315) 808-9152, (315) 612-5540, (315) 650-9626, (208) 586-7527, (315) 653-2649, (445) 316-4586, (315) 674-9934, (315) 674-9821, (508) 598-0567, (315) 649-9699, (835) 251-3450, (315) 780-9979, (315) 674-9138, (315) 780-9122, (518) 202-8792, (920) 974-8118, (464) 235-8236, (838) 666-0692, (920) 974-5337, (518) 702-0015, (518) 771-9579, (315) 674-9580, (914) 554-9165, (934) 465-9273, (680) 208-5829, (680) 240-1355, (518) 654-0645, (838) 339-9507, (339) 233-2879, (470) 492-2237, (351) 202-8262, (470) 200-0031, (316) 396-1793, (254) 903-8652, (743) 251-9298, (719) 341-1950, (223) 247-6626, (719) 677-9374, (219) 294-7732, (252) 703-0392, (502) 206-6753, (231) 280-9030, (314) 470-1760, (201) 586-1099, (256) 486-6785, (645) 203-0172, (254) 481-1257, (320) 216-8723, (228) 588-4145, (470) 293-1931, (319) 289-9523, (223) 247-6802, (304) 398-7477, (217) 207-5316, (502) 293-7550, (320) 318-5491, (347) 467-8123, (504) 414-9955, (314) 940-7569, (502) 317-3650, (302) 400-9168, (347) 317-5894, (217) 364-0648, (347) 467-3955, (405) 342-2251, (563) 294-5272, (719) 409-8529, (520) 654-9431, (223) 249-6258, (985) 241-9883, (731) 270-9128, (302) 203-6807, (319) 348-2240, (731) 290-9306, (256) 454-9583, (502) 787-9445, (314) 274-6177, (231) 244-3331, (516) 895-9603, (240) 208-1214, (731) 290-9182, (217) 212-1252, (217) 212-1134, (404) 689-9068, (502) 233-6620, (217) 207-5213, (302) 271-9688, (240) 208-4010, (520) 652-9690, (201) 586-1096, (215) 706-8729, (470) 492-1752, (219) 216-6058, (743) 439-5482, (209) 364-8541, (505) 451-8027, (262) 274-9907, (645) 210-3851, (302) 219-1455, (209) 540-1628, (314) 528-9372, (502) 351-1682, (217) 488-0972, (470) 492-2248, (262) 274-9199, (314) 542-8222, (254) 903-8786, (217) 283-1259, (470) 492-1889, (302) 215-9902, (985) 570-1668, (254) 264-6235, (719) 409-9235, (276) 218-5780, (731) 224-5345, (405) 335-1580, (731) 230-1913, (219) 248-0525, (209) 389-5183, (228) 586-8301, (208) 747-8317, (551) 367-8633, (551) 367-8586, (339) 209-1090, (888) 769-4085, (888) 769-1084, (239) 421-1503, (214) 286-5333, **which are all phone numbers owned, assigned to, and operated by the**

**Defendant**.

39.    During its telephone solicitations, Defendant has deliberately used the names of various entities to conceal its true identity and mislead consumers. Defendant has falsely represented itself as operating under names including, but not limited to, Pinnacle Lending, Supreme Lending, Unified Lending, and Alliant Solution Group—business names which, upon information and belief, either do not exist or are inactive corporate entities.

40.    On or about January 30, 2025, Plaintiff received multiple unsolicited phone calls from different telephone numbers believed to be associated with Defendant.

41.    In an effort to determine who had been placing the calls, Plaintiff returned one of the calls. A representative answered and stated they were with "Unified Lending."

42.    Plaintiff asked the representative where their company was located, and the representative responded that the company was based in California. Plaintiff then asked for the company's website, and the representative provided "usclarity.com."

43.    Plaintiff discovered that "usclarity.com" is the website for Clarity Debt Resolution, Inc., not Unified Lending. As a result, Plaintiff determined that it was Clarity Debt Resolution, Inc. that had been placing the repeated and unsolicited telephone calls to Plaintiff's cellular phone while falsely identifying itself as other entities.

44.    Each of the phone calls placed by Defendant to Plaintiff's Cellphone were intended to induce Plaintiff to purchase Defendant's products or services.

45.    The phone calls received by Plaintiff constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's services.

46.    Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to call it.

47.     Plaintiff did not have an established business relationship with Defendant during the time of the telephone solicitations from Defendant.

48.     Plaintiff did not have a personal relationship with Defendant at any point in time.

49.     Plaintiff did not give Defendant prior express invitation or consent in writing for Defendant to call Plaintiff's cellular telephone for marketing or solicitation purposes.

50.     Defendant sent approximately 300-400 unsolicited phone calls to Plaintiff's Cell Phone which was registered with the National Do-Not Call Registry, for several months prior to the unsolicited text messages in violation of the TCPA, including 47 C.F.R. § 64.1200(c).

51.     Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the Do-Not Call provision in 47 C.F.R. § 64.1200(c).

52.     Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including the internal Do-Not Call provision in 47 C.F.R. § 64.1200(d).

53.     Defendant did not place the phone calls for an emergency purpose as defined by 47 U.S.C. § 227(b)(1)(A)(i).

## ARTICLE III STANDING

54.     Defendant placed multiple phone calls to Plaintiff's personal cellular telephone which was registered on the National Do-Not-Call Registry. Such unwanted solicitations from Defendant are a nuisance, an invasion of privacy, and wasted Plaintiff's time and enjoyment in use of his personal cellular telephone. All three of these injuries are concrete and *de facto*.

55.     Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by

1    having to take time picking up or having to decline each phone call.

2        56.    The above telephone solicitations were directly and explicitly linked to

3    Defendant. During a returned call, Defendant identified itself as "Unified Lending,"

4    but then directed Plaintiff to the website "usclarity.com," which is the official website

5    for Clarity Debt Resolution, Inc. This interaction revealed that Clarity Debt

6    Resolution, Inc. was the true source of the repeated unsolicited calls. These deceptive

7    calls are the sole source of Plaintiff's injuries. Therefore, Plaintiff has alleged facts

8    demonstrating that his injuries are traceable to the conduct of Defendant.

9        57.    Plaintiff's Request for Relief includes a request for damages for each

10    phone call placed by Defendant to his Cellphone as authorized by statute in 47 U.S.C.

11    § 227, *et seq*.  The statutory damages were set by Congress and specifically redress

12    the damages suffered by Plaintiff.

13    <u>**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>

14    <u>**REGARDING THE NATIONAL DO-NOT CALL REGISTRY**</u>

15    **47 C.F.R. § 64.1200(C), 47 U.S.C. § 227(C)(5)**

16        58.    Plaintiff re-alleges and incorporates by reference each preceding

17    paragraph as though fully set forth herein.

18        59.    Plaintiff received more than one phone call within a 12-month period,

19    sent by or on behalf of Defendant, for the express purpose of marketing Defendant's

20    goods and/or services without Plaintiff's written prior express consent.

21        60.    At all relevant times, Defendant knew or should have known that its

22    conduct as alleged herein violated the TCPA.

23        61.    Defendant placed unsolicited and unauthorized phone calls to the

24    cellular telephone of Plaintiff which was registered with the National Do-Not Call

25    Registry, for the purpose of marketing goods and/or services to Plaintiff.

26        62.    Defendant knew that it did not have prior express written consent to

27    place these phone calls and knew or should have known that it was calling a cellular

28    number on the National Do-Not Call Registry in violation of the TCPA.

63.     Defendant willfully or knowingly allowed phone calls to be placed to Plaintiff's cellular telephone number that was on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff; yet it disregarded such information and placed illegal and unwanted solicitation phone calls.

64.     Defendant's phone calls caused Plaintiff actual harm including, but not limited to, invasion of his personal privacy, aggravation, inconvenience, nuisance and disruption in his daily life, reduction in cellular telephone battery life, data, and loss of use of his cellular telephone.

65.     Because Defendant knew or should have known that Plaintiff's cellular telephone number was on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff pursuant to § 227(c)(5) of the TCPA.

66.     As a result of Defendant's violations, Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(B) and 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47 U.S.C. § 227(c)(5)(B).

67.     Plaintiff is also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A);

- Actual damages for violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);

COMPLAINT

- Statutory damages of $500.00 for each and every one of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);
- Statutory damages of $1,500.00 for each and every one of Defendant's knowing or willful violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(C);
- Costs of suit;
- Pre-judgment and post-judgment interest on monetary relief; and
- All other and further relief as the Court deems necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: April 4, 2025                    Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: *Gor Antonyan*
Gor Antonyan, Esq.
gor@kazlg.com
*Attorneys for Plaintiff*